UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KAREN B.,

                      Plaintiff,                      **DECISION AND ORDER**

        v.

                                                  1:20-CV-00295 EAW

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## INTRODUCTION

Represented by counsel, Plaintiff Karen B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on July 30, 2013. (Dkt. 9 at 509; Dkt. 8 at 139-145).[1] In her application, Plaintiff alleged disability beginning December 3,

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

2012, due to tears in her rotator cuff, and lower back, shoulder, and neck pain. (Dkt. 8 at 163). Plaintiff's application was initially denied on October 24, 2013. (Dkt. 9. at 509; Dkt. 8 at 91-94). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani on August 12, 2015, who issued an unfavorable decision on January 5, 2016. (Dkt. 8 at 28-37). Following a denial of review by the Appeals Council, Plaintiff sought review in this Court and the matter was remanded for further proceedings on August 16, 2018. (Dkt. 9 at 529-30). On October 30, 2018, the Appeals Council remanded the case to the ALJ. (*Id.* at 531-35).

On November 27, 2019, a second hearing was held before the same ALJ in Buffalo, New York. (*Id.* at 446, 463-504). At the hearing, Plaintiff requested a closed period of disability ending on April 30, 2016. (*Id.* at 446, 504). On December 27, 2019, the ALJ issued an unfavorable decision. (*Id.* at 446-457). After 60 days, the ALJ's determination became the Commissioner's final decision. *See Marchand v. Comm'r of Soc. Sec.*, No. 17-CV-3252 (ENV), 2017 WL 2633511, at *2 (E.D.N.Y. June 14, 2017) ("[W]here, as here, the case has been remanded from federal court, the ALJ's subsequent decision on remand becomes the 'final decision' of the Commissioner unless the Appeals Council assumes jurisdiction of the case within 60 days after the ALJ's decision is issued." (quoting 42 U.S.C. §§ 404.984(d), 416.1484(d)). This action followed.

## **LEGAL STANDARD**

### I.    **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.    **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and

work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2021. (Dkt. 9 at 448).  At step one, the ALJ determined that Plaintiff had engaged in substantial gainful work activity since May 1, 2016, but did not engage in substantial gainful activity during the closed period at issue.  (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of status post right shoulder surgery, degenerative disc disease of the spine, right hip impairment, obesity, asthma, and chronic bronchitis.  (*Id.* at 449).  The ALJ further found that Plaintiff's medically determinable impairments of headaches, insomnia, right carpal tunnel syndrome, hypertension, and pneumonia were non-severe.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*.).  The ALJ particularly considered the criteria of Listings 1.02, 1.04, 3.02, 3.03, and Plaintiff's obesity in reaching his conclusion.  (*Id.* at 449-50).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> With occasional climbing of ramps and stairs, balancing, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; frequent

- 5 -

handling with the right upper extremity; occasional overhead reaching with the right upper extremity; frequent pushing/pulling with the right upper extremity; no work around moving mechanical parts or hazardous machinery; and avoidance of concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants.

(*Id.* at 450).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 455).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker, produce weigher, and bagger. (*Id.* at 456).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 457).

## II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that (1) the RFC is not supported by substantial evidence because the ALJ did not properly weigh treating physician opinions and other medical evidence, and (2) the consistency finding is not supported by substantial evidence.  (Dkt. 12-1 at 19-30).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.  Weighing of Treating Physician Opinions and Other Medical Evidence

Plaintiff's first argument is that the ALJ erred in evaluating the opinions offered by her treating physicians and assessing the medical evidence of record.  Plaintiff focuses specifically on the ALJ's failure to credit the opinions of Plaintiff's treating physicians and

chiropractor, his alleged mischaracterization of opinion evidence, and assignment of improper weight to a consultative examiner's opinion. The Court finds each of Plaintiff's contentions to be without merit.

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.* "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight" to opinion evidence constitutes error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the]

- 7 -

treating source's medical opinion."  20 C.F.R. § 404.1527 (c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)).  "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ."  *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

### 1.    Assessment of Treating Physicians and Treating Chiropractor Opinion Evidence

The Court turns first to the ALJ's evaluation of the opinions of Plaintiff's treating physicians Marc Tetro, M.D., Bernard Beaupin, M.D., Cameron B. Huckell, M.D., and Mikhair Strut, M.D., whose opinions the ALJ addressed collectively in the decision.  While the ALJ did not explicitly walk through the factors of the treating physician rule, the ALJ's decision notes these physicians' treatment of Plaintiff and the time frame and context in which they treated and examined her.  Further, the ALJ explained the reasons for affording little weight to these opinions.

First, the ALJ gave these opinions little weight because they were "conclusory, vague, poorly explained, and relate to a final issue reserved to the Commissioner."  (Dkt. 9 at 515).  As the ALJ noted, each of these providers opined that Plaintiff was disabled or unable to work.  *See, e.g.,* Dr. Tetro (*id.* at 214 ("As a result of the MVA related injuries, [Plaintiff] is unable to work and would be considered disabled with regards to the usual occupation")); Dr. Beaupin (*id.* at 324 ("Patient is disabled.")); Dr. Huckell (*id.* at 224 ("It is my opinion that [Plaintiff] remains temporarily disabled at this time as a result of the

motor vehicle accident.")); Dr. Strut (*id.* at 315 ("I will continue her temporary disability.")).  It is well-established that "the ultimate issue of disability is reserved for the Commissioner." *Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003).  Accordingly, "[i]f an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion." *Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 WL 195342, at *2 (W.D.N.Y. Jan. 20, 2021).  It was proper for the ALJ to decline to defer to the medical opinions on the ultimate issue of Plaintiff's ability to maintain gainful employment.

Similarly, the ALJ's conclusion that the opinions on disability were vague and conclusory was not improper.  Each of the providers included their opinion on disability in Plaintiff's treatment notes without a further explanation for the basis of the conclusion or the factors considered.  Moreover, the ALJ explained that he ascribed little weight to the opinions on grounds that "some are specific to a period and are of limited longitudinal value in addressing the claimant's limitations" and "are also inconsistent with the claimant's significantly intact activities of daily living and with the opinion of Dr. Siddiqui." (Dkt. 9 at 454).  Both were appropriate reasons to discount the weight given to these providers' opinions.  A limiting condition that is temporal in nature is not the equivalent of the ultimate determination being made by the ALJ.  Similarly, it is well-settled that a treating physician's opinion is not entitled to controlling weight when it is not supported by evidence in the record.  *See Halloran*, 362 F.3d at 32 ("the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued

opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts"). This includes when the opinions of treating physicians are "not particularly informative." *Id*.

The ALJ further explained giving little weight to Dr. Gerow who, like the other providers, opined that Plaintiff was unable to work. (Dkt. 9 at 120 ([Plaintiff] is considered disabled as a result of the MVA.")). The ALJ noted that in addition to the reasons he gave little weight to Plaintiff's treating physicians' opinions on the issue of disability, as a chiropractor, Dr. Gerow is not entitled to the same level of deference as a treating physician. Under the regulations applicable to Plaintiff's claims, a chiropractor is not an acceptable medical source, and accordingly, the ALJ was not required to apply the treating physician rule in assessing these opinions. *See Brush v. Berryhill*, 294 F. Supp. 3d 241, 259 (S.D.N.Y. 2018) ("[A]n ALJ is not required to give a chiropractor's opinions controlling weight under the Commissioner's regulations for treating sources."). In any event, the ALJ considered the treating chiropractor's opinions and found them inconsistent with other evidence of record. This was within his discretion and does not warrant reversal or remand.

Finally, the Court rejects Plaintiff's argument that the ALJ failed to discharge his duty to develop the record with respect to the treating provider's opinions. "Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Act, because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Ubiles v. Astrue*, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *7 (W.D.N.Y. July 2, 2012)

(internal quotations omitted).   Here, Plaintiff contends that the ALJ was obligated to recontact her treating providers to solicit more detailed statements from them.   However, "[t]he duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings. . . . Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis v. Comm'r of Soc. Sec.*, No. 5:17-CV-0514 (WBC), 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017)); *Sarah C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1431 (FJS), 2021 WL 1175072, at *10 (N.D.N.Y. Mar. 29, 2021) ("[T]the fact that the record does not contain any 'function-by-function opinions' from any of Plaintiff's treating sources addressing her mental or physical abilities does not create a gap in the record or render the record incomplete.   As stated above, so long as the record has no obvious gaps and contains sufficient evidence for the ALJ to render an RFC finding, she has no duty to recontact treating sources for statements or opinions.").   In this case, the record before the ALJ, including Plaintiff's testimony and treatment records and the opinions of multiple providers, was sufficient to assess the opinions of Plaintiff's treating physicians and treating chiropractor and to determine whether Plaintiff was disabled.   The ALJ was accordingly under no obligation to recontact Plaintiff's treatment providers or to otherwise further develop the record. *See Varalyn B. v. Commissioner,* No. 5:18-CV-978(ATB), 2019 WL 5853388, at *5 (N.D.N.Y. Nov. 8, 2019) ("Despite the duty to develop the record,

remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC.").

### 2.   Assessment of Dr. Beaupin's Opinion

Plaintiff contends that the ALJ mischaracterized the opinion of Dr. Beaupin and incompletely and inaccurately summarized it.  The Court disagrees.

In addition to his assessment of Dr. Beaupin's opinion collectively with the other treating physicians, the ALJ separately addressed the opinion of Dr. Beaupin in the decision.  (Dkt. 9 at 454-55).  As noted, the ALJ gave limited weight to the portions of Dr. Beaupin's opinions that concluded Plaintiff was under a disability.  (*Id.* at 454).  But the ALJ also explained that to the extent that Dr. Beaupin opined that Plaintiff was capable of medium work with lifting up to 25 pounds, those portions of Dr. Beaupin's opinions were entitled to great weight because they were consistent with the ALJ's conclusions reflecting an ability to engage in light exertional activity.  The ALJ explained that this part of Dr. Beaupin's opinion was also "generally consistent with the opinion of Dr. Siddiqui relating to Plaintiff's exertional limits."  (*Id.* at 455).

Plaintiff argues that the ALJ mischaracterized the record and summarized Dr. Beaupin's statement in an incomplete manner.  Specifically, Dr. Beaupin's February 13, 2014 treatment notes indicate as follows:

> Patient attempted to return to work and from her symptoms after the injection as well as her physical examination my opinion was that she could.  The opinion of the medical physician for the NFTA was that she could not.  I then sent her for functional capacity evaluation which showed that she was able to perform up to 25 pounds of medium physical demand level work and that she did demonstrate safe physical abilities to perform the physical work requirements for the job of driver with the NFTA.  Unfortunately, the day after the functional capacity evaluation [Plaintiff] presents with significantly

increased pain along with a limp on the right leg.  Essentially her symptoms
are the same as prior to the steroid injection for the right hip.  This leads me
to believe that while she could perform the work as an NFTA bus driver on
any one given day, Dr. Jacob (medical Dir. For NFTA) is correct in his
assertion that she is not fit for duty at this time.  My opinion is that this could
potentially change in the future with appropriate treatment for the right hip
which we are endeavoring to provide.

(Dkt. 9 at 342).  Although the ALJ's discussion of Dr. Beaupin's opinions could have been

more thorough, the Court disagrees that the ALJ intentionally mischaracterized Dr.

Beaupin's statements.  The ALJ expressly acknowledged that Dr. Beaupin opined that

Plaintiff suffered from a disability and gave those portions of his opinion limited weight,

so it cannot be said that the ALJ completely overlooked Dr. Beaupin's opinions concluding

that Plaintiff was limited in her capabilities.  The ALJ noted that Dr. Beaupin endorsed a

functional capacity evaluation supporting medium work for Plaintiff, which is consistent

with Dr. Beaupin's records.   While Dr. Beaupin further indicated in his records that

Plaintiff experienced increased pain following the examination that may inhibit her ability

to engage in such work on a long term basis, this does not negate that he concluded that on

the date of the functional evaluation, he found her to possess such capabilities.  By limiting

her to light work rather than medium, the ALJ arguably credited that portion of Dr.

Beaupin's opinion that the recommendation for medium work potentially was not

sustainable.  For these reasons, the Court is unable to conclude that the ALJ's summary of

the opinion was wholly inaccurate.  It accordingly finds that the ALJ's assessment of Dr. Beaupin's opinions is supported by the record and does not justify remand.

### 3.    Assessment of Consultative Examination

Finally, Plaintiff contends that the ALJ erred in giving great weight to the opinion of consultative examiner Abrar Siddiqui, M.D.  (Dkt. 9 at 298-302).  The ALJ explained that Dr. Siddiqui's opinion that Plaintiff had mild to moderate limitations in sitting, standing, climbing, pushing, pulling, and carrying heavy objects was entitled to such weight because the opinion was based on an examination and Dr. Siddiqui was familiar with disability requirements.  The ALJ also concluded that the opinion was consistent with the record, particularly Plaintiff's level of daily activities, lack of objective evidence supportive of the limitations she alleged or need for an assistive device, and successful recovery from right shoulder surgery.  (*Id.* at 455).

The Court finds no error.  "In the Second Circuit, an ALJ is entitled to rely on the opinions of consultative examining physicians, as they may constitute substantial evidence, if the administrative record supports them."  *Watson v. Berryhill*, No. 2:18-cv-1636 (ADS), 2019 WL 5592854, at *4 (E.D.N.Y. Oct. 30, 2019); *see also Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008) (holding that report of consultative physician may override opinion of a treating physician where it is supported by substantial evidence); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence . . . and the report of a consultative physician may constitute such evidence." (internal citation omitted)); *Brogdon v. Berryhill*, No. 17-CV-7078 (BCM), 2019 WL 1510459, at *10

(S.D.N.Y. Mar. 22, 2019) ("If the opinion of a treating physician is either absent or deemed not controlling, the opinions of consultative examiners and state agency reviewers may provide substantial evidence to support an ALJ's RFC determination.").

Here, the ALJ explained why he found the opinions offered by Dr. Siddiqui to be well-supported by the record.  The Court disagrees with Plaintiff's contention that the opinions of Dr. Siddiqui were as equally vague as those of Plaintiff's treating providers because unlike the treating providers, Dr. Siddiqui expressly opined on Plaintiff's functional abilities, including conclusions that she had mild to moderate limitations in her ability to sit, stand, climb, push, pull, or carry heavy objects.  In addition, the ALJ noted the consistency of Dr. Siddiqui's opinion with the record as a whole in crediting the opinion and any failure of the opinion to line up perfectly with the RFC determined by the ALJ does not constitute error.  *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . .  Here, the treatment notes were in line with the ALJ's RFC determinations.") (summary order); *Corbiere v. Berryhill,* 760 F. App'x 54, 56 (2d Cir. 2019) (affirming Commissioner's decision relying on treatment notes to formulate RFC despite lack of medical opinion expressly discussing plaintiff's physical limitations) (summary order); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a medical source statement or formal medical

opinion is not necessarily required[.]") (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F.
App'x. 29, 34 (2d Cir. 2013)) (summary order).  Accordingly, the ALJ's reliance on the
opinions offered by Dr. Siddiqui does not require remand.

In sum, the ALJ carefully weighed the opinion evidence in the record in accordance
with the treating physician rule, and he adequately explained his reasons for not adopting
some of the limitations opined by some of Plaintiff's treating providers.  The Court finds
that the ALJ sufficiently assessed the medical evidence of record and that accordingly,
remand is not required on this basis.

**B.   Evaluation of Plaintiff's Credibility**

Plaintiff's second and final argument is that the ALJ's "consistency finding" is
unsupported by substantial evidence, and the ALJ erred in assessing the credibility of her
subjective complaints.  (Dkt. 12-1 at 29-30).  Plaintiff raises several issues relating to the
ALJ's evaluation of his subjective complaints, including that the ALJ did not adequately
explain which allegations were unsupported by the record, mischaracterized her activities
of daily living, and improperly considered Plaintiff's conservative treatment in discounting
her allegations.  For the reasons set forth below, the Court finds no error in the ALJ's
credibility assessment.

The ALJ, who has the "opportunity to observe witnesses' demeanor, candor,
fairness, intelligence and manner of testifying," is "best-positioned to make accurate
credibility determinations." *Whiting v. Astrue*, No. CIV.A. 1:12-274, 2013 WL 427171, at
*6 (N.D.N.Y. Jan. 15, 2013), *adopted*, 2013 WL 427166 (N.D.N.Y. Feb. 4, 2013).  As
such, "credibility findings of an ALJ are entitled to great deference and therefore can be

reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F. Supp. 2d 229, 235 (W.D.N.Y. 2006) (quotation and citation omitted).

In assessing the credibility of a claimant's subjective complaints, the Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant[ suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms. *Id*. (quoting 20 C.F.R. § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

In this case, the ALJ applied the two-step inquiry. At the first step, he found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Dkt. 9 at 451). Accordingly, the ALJ assessed Plaintiff's credibility, and then discussed several reasons why Plaintiff's allegations were not fully credible.

First, the ALJ noted that although Plaintiff underwent surgery for her right shoulder, the record indicates that the surgery was relatively successful in treating her shoulder condition. (*Id*. at 453). He noted that her treatment for her spinal conditions were also routine and conservative with no documented continued treatment with a specialist and her

primary care visits demonstrated no significant deficits.  (*Id.*).  Second, Plaintiff's activities of daily living included being able to cook for herself and her 84-year-old mother, for whom she was the primary caregiver and with whom she lived.  The ALJ concluded that the evidence of Plaintiff's activities of daily living suggested a greater functionality than alleged.  (*Id.* at 453-54).  Third, the ALJ acknowledged Plaintiff's testimony regarding treatment and prescription problems concerning insurance, but also noted that a treating physician stopped prescribing narcotics, which reasonably called into question the reliability of Plaintiff's complaints of pain at that time.  (*Id.* at 454).  Fourth, Plaintiff testified that she had returned to work in light of monetary needs and unrelated to any physical improvement in her condition.  (*Id.*).  Finally, the ALJ noted that while Plaintiff alleged needing a cane, there was no documentation in in the record of any prescription for a cane or other assistive device.  (*Id.*).

These reasons supported the ALJ's credibility conclusions and were not improper. While it is true that the capability to perform activities of daily living is not inherently inconsistent with a finding of disability, "[t]he law is clear that the ALJ may consider . . . [a claimant's] purported activities of daily living for the purposes of a credibility determination." *Cahill v. Astrue*, No. 1:11-CV-148, 2012 WL 3777072, at *5 (D. Vt. Aug. 29, 2012).  Indeed, the Commissioner's regulations expressly identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3)(i).  In considering activities of daily living, "[t]he issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity,

persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence." *Morris v. Comm'r of Soc. Sec.*, No. 5:12-CV-1795 MAD/CFH, 2014 WL 1451996, at *6 (N.D.N.Y. Apr. 14, 2014).  This is so because "[o]ne strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record." *Id.*  The Court is not persuaded that the ALJ misstated or exaggerated Plaintiff's activities of daily living and his other reasons for not finding her fully credible were sound.  *See Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 646 (S.D.N.Y. 2019) ("While conservative treatment alone is not grounds for an adverse credibility finding, the ALJ may take it into account along with other factors.") (internal citation omitted); *see also Kenneth W. v. Comm'r of Soc. Sec.*, No 1:19-CV-0825, 2020 WL 7385251, at *7 (W.D.N.Y. Dec. 16, 2020) (ALJ properly considered plaintiff's noncompliance with treatment as relevant to the evaluation of his subjective allegations).

Accordingly, contrary to Plaintiff's implication, the ALJ adequately explained why he found that Plaintiff's subjective complaints were not entirely supported by the record and the Court finds no error in the ALJ's credibility assessment.  The ALJ applied the two-step inquiry and set forth well-supported reasons for finding Plaintiff's subjective allegations less than fully credible.  Plaintiff has not shown that remand on this basis is warranted.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  July 30, 2021
          Rochester, New York